In the Matter of the Estate of ELIZABETH HUNTER, of Unsound Mind; JAMES HUNTER *et al.*, Appellants.

1. **Terms of Court:** ADJOURNMENT TO DATE NAMED: INTERVENING TERM HELD BY SAME JUDGE IN ANOTHER COUNTY. Where a term of the district court was adjourned to a date named, and during the time intervening the same judge held a term of court in another county in the same district, *held*, that the proceedings had upon the reconvening of the court in the first county were not invalidated by the adjournment.

2. **Guardian and Ward:** ACTION BY GUARDIAN: DEFENSE: NOTICE TO WARD: JURISDICTION. In proceedings commenced by a guardian of a person of unsound mind, affecting the property interests of his ward, and asking an order against the interest of the latter, a guardian *ad litem* should be appointed to make defense for the ward, but the court has no jurisdiction to make such appointment before proper service of notice of the proceeding has been made upon the ward.

*Appeal from Johnson District Court.*—HON. S. H.
FAIRALL, Judge.

FRIDAY, JANUARY 29, 1892.

ELIZABETH Hunter was the wife of Adam Hunter,
who died testate in December, 1876, leaving surviving
him seven children, and Elizabeth as widow. The
will was duly admitted to probate, administration
granted, final settlement made and executor discharged
in 1879. The will gave to the widow, among other
bequests, a life estate in a tract of land known as the
"Home Farm," with Lemuel Hunter, a son, as resid-
uary devisee. By the terms of the devise to Lemuel of
the home farm he was required to, under certain con-
ditions, make certain payments to a daughter, Rachael,
during her life; and, if Rachael died within ten years,
then Lemuel was to pay to the remaining heirs one
thousand six hundred dollars. Rachael died in 1884.
The widow became of unsound mind in 1883, and her
son George Hunter was appointed as her guardian. No
election has ever been placed of record by the widow
of her intention to take under the will. In 1889 a part
of the legatees, under the contingent bequest of the one
thousand six hundred dollars to be paid by Lemuel
after the death of Rachael, brought suit therefor and
asked that the payment thereof be secured by a lien on
the home farm. In October, 1889, James Hunter, a
son, commenced a suit against all the heirs and the
widow, asking for a construction of the will, and claim-
ing an interest in the land; and in November, 1889,
Lemuel commenced a proceeding, upon notice to
Elizabeth and her guardian, to require her to "make a
record of acceptance of the provisions of said will."
November 18, 1889, George Hunter, as guardian of
Elizabeth, commenced this proceeding, reciting in the
petition as above, with other particulars, that after the
decease of Adam Hunter the widow received and treated

the devises to her in lieu of dower in all respects, and so recognized the provisions of the will during the period of her sanity, and makes the following prayer: "Your petitioner therefore prays that he may be permitted, as guardian, for and on behalf of his said ward, to make the requisite and necessary record of acceptance of the terms of said Adam Hunter's will, and for such other orders and authority as may be deemed necessary to carry out the intention of the said Adam Hunter in making said will." No notice of this proceeding was served on Elizabeth Hunter. On January 20, 1890, the court appointed Joseph A. Edwards her guardian *ad litem*, who, in her behalf, filed an answer, with some admissions and many denials of fact, and with the following conclusions: "This defendant therefore denies that her said guardian is entitled to an order permitting him, on behalf of this defendant, to make any record of acceptance of the terms of said will, and denies that he is entitled to any order or relief whatever; and defendant, by her said guardian *ad litem*, asks that her rights herein be fully protected." The issues were tried, resulting in a judgment "that election be made by the court through the said guardian;" and an order of acceptance under the will was entered by the court. On the sixth day of February, and after the entry of the order by the court, Elizabeth Hunter died. On the twenty-fifth of February, 1890, John C. Hunter and others, children of Elizabeth Hunter, filed their petition showing their interest in the final result of the proceeding; that George Hunter had been appointed executor of the will of Elizabeth Hunter, and would not, by appeal or otherwise, protect their interest in the homestead tract,"—and asked that they be substituted as parties to prosecute an appeal in their own names, and presented to the court a bill of exceptions, which the court signed, and granted their request.—*Reversed.*

*Remley & Heberling,* for appellants.

*Baker & Ball* and *Ranck & Wade,* for appellee.

GRANGER, J.—I. The order of acceptance under the will was made by the court on the twenty-fifth day of January, 1890, after which—February

**1. TERMS of court: adjournment to date named: intervening term held by same judge in another county.** 1, 1890—the court, by its order, adjourned till February 17, 1890, during which adjournment a regular term of the district court was held in Iowa county, which county, with Johnson county, constitutes a judicial district with but one judge. The district court of Johnson county agained convened, February 17, 1890, pursuant to the order of adjournment, and several adjournments other than those from day to day were had thereafter till March 22, 1890, the day on which the final order in this proceeding was made, permitting the parties to appeal, and signing the bill of exceptions. The appellee moves to dismiss the appeal on the ground that the order permitting the appeal was made after the January term of the district court in and for Johnson county had expired by operation of law, and no time was granted during the term for settling a bill of exceptions. We are not favored with an argument by the appellee in support of the motion, but understand it to rest on the fact that because on February first the court adjourned "the January term in said county to the time subsequent to the holding of the February term in Iowa county," the act was illegal, and the January term expired by operation of law.

Adjournments of the business of a term of court from day to day and from time to time, as the necessities of the situation seem to demand, is essential to the conduct of the business, and has the sanction of universal usage. Such a right is not questioned. Without the intervening term in Iowa county, the

validity of the adjournment to February seventeenth would not, we suppose, be questioned. How does that fact affect the situation, or why should it render the judgment or order void? It is certainly without effect on the Johnson county term. Barring the fact that the same judge held the two terms, they are as entirely distinct and independent as are terms held in different districts. The fact that the same judge holds the two terms is not of importance. It is the holding of distinct and separate terms, each unaffected by the other. There is nothing in public policy or private interests that demands a rule that such an adjournment is void. In Davis v. Fish, 1 G. Greene, 406, the ruling is placed on the ground that the law limited the term to one week, beyond which the court could not extend it. The holding in Davis v. Fish is, in State v. Knight, 19 Iowa, 94, "doubted;" and a more liberal rule is stated upon facts more favorable to the rule contended for by the appellant than are those of this case. We hold that the adjournment was valid, and the proceedings had during the term were unaffected by the adjournment.

II. An assignment brings in question the jurisdiction of the court to proceed in the absence of a notice to

2. Guardian and ward: action by guardian: defense: notice to ward: jurisdiction. Elizabeth Hunter. The appellee's contention is that no service of notice was necessary. The appellee seems, in argument, to concede that if the proceeding was to deprive the ward of title to real estate by any of the statutory methods a notice would be necessary, because such proceedings are "arbitrary in their nature," and there must be a strict compliance with the statute. We fail to see how a proceeding at common law is less arbitrary than one under the statute, if the purpose is to divest the ward of title. The district court, by the proceeding, seems to have understood it to be adversary, in the sense that the guardian was seeking an order divesting or limiting a right of the ward, rather

than of supporting or confirming a right, and for the purpose of a defense appointed a guardian *ad litem*, whose answer, taken as true, shows that the guardian is seeking to divest the ward of her title to real property; for a claim of the appellants is, that, under the terms of the will, she is entitled to a life estate in the home farm, and also a distributive share under the statute. The decree of the district court, under the prayer of the petition, deprives her of the latter right. In such a case, it cannot properly be said that the guardian is acting for, but against his ward; for, without reference to actual legal rights, it is the province of those of adverse interests to seek such an order, and of the guardian to admit or deny, as the interests of the ward would dictate. Under the issue and the proceeding, the only purpose was to bind the ward by the order of the court in favor of other parties, and not other parties in favor of the ward. The proceeding placed the ward in the situation of a defendant; and we are in accord with the view of the district court that the defense should be made by a guardian *ad litem* appointed by the court, for the ward had been "judicially found to be of unsound mind." In section 2570 of the Code, it is provided: "The defense of an action against a person judicially found to be of unsound mind * * * must be by his guardian or a guardian appointed by the court to defend for him. Such appointment may be made upon the application of any friend of the defendant or on that of the plaintiff, but not until service has been made as directed in this Code; and no judgment can be rendered against him until defense has been made as herein provided." Code, secs. 2566, 2567, make very similar provisions as to defenses for minors; and in *Good v. Norley*, 28 Iowa, 188, it was held that the court had no jurisdiction to appoint a guardian *ad litem* before service of the notice on the minor. The similarity of the statutes makes the reason and conclusion in

that case applicable to this.    See, also, *Allen v. Saylor,* 14 Iowa, 437.

It is said that the guardian had no right to make the election, but that it was the duty of the court to make it, as it did; that the court "acts in the place and stead of the person of unsound mind."    The provision; of the law as to election or acceptance under a will by a widow involves an exercise of her discretion—her "consent" to the will.    Code, sec. 2452.    This proceeding asks an order of acceptance, which when granted is to be decisive of her rights in certain particulars, and the acceptance by the court is to be based on its finding of fact and law under the issues presented; and before the court can thus determine issues the necessary jurisdictional facts must exist.    The right of the court to make the acceptance, under proper conditions, we need not discuss.    We are of the opinion that the district court was without jurisdiction in the matter.    This situation of the case makes it unnecessary to consider other questions.    REVERSED.